IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STANLEY VERNELL LEDBETTER, JR. § <br> (TDCJ No. 1635470), § <br> § <br> Petitioner, § <br> § <br> V. § <br> § <br> LORIE DAVIS, Director § <br> Texas Department of Criminal Justice, § <br> Correctional Institutions Division,[1] § <br> § <br> Respondent. § | | No. 3:14-cv-4332-B-BN |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Petitioner Stanley Vernell Ledbetter, Jr., a Texas inmate, proceeding *pro se*, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court should deny the application for the reasons explained below.

**Applicable Background**

Ledbetter is imprisoned for life pursuant to three convictions for aggravated sexual assault with a deadly weapon. The habeas application before the Court concerns one of those convictions – his October 21, 2009 conviction following a jury trial in Dallas County, Texas. *See State v. Ledbetter*, No. F08-73084-V (292nd Jud. Dist. Ct., Dallas Cnty., Tex.). That criminal judgment was affirmed on direct appeal. *See*

---

[1] Lorie Davis has succeeded William Stephens as Director of the Texas Department of Criminal Justice, Correctional Institutions Division, and, as his successor, she is "automatically substituted as a party." FED. R. CIV. P. 25(d).

*Ledbetter v. State*, No. 05-09-01313-CR, 2012 WL 3241654 (Tex. App. – Dallas Aug. 20, 2012). And the facts underlying this conviction and sentence as summarized by the Dallas Court of Appeals are that:

> At about 3:20 a.m. on May 15, 2006, the complainant, Tammy May Watkins[, a pseudonym,] woke up to see a man, later identified as appellant, in her apartment bedroom. He did not turn on a light. It looked to Watkins like he was pointing something directly at her, which she assumed was a gun. He told her to lie on her stomach with her hands out; he told her he had a gun and a knife. While he said that, she felt a gun at the back of her neck; she said "[i]t was hard but sort of sharp, too...." He asked her if she valued her life or her money more, and when she said her life, he said, "Good." Then, he asked her where he purse was. When she told him it was downstairs, he told her to get up slowly and that he had a weapon. She felt "something strong and sharp" in her back on the side as she walked downstairs in the dark, with appellant behind her. Appellant used a flashlight to look through her purse; he obtained her ATM card and directed her to her car. He sat behind Watkins. Before he moved the rearview mirror, she saw that his face was covered by a bandana, and he was wearing a black hat. She obtained $1,000 from an ATM. He was angry that a receipt showed more money in her account, but she could not obtain additional cash from another ATM. He threatened to kill her if she "attracted the cops" while they were driving.
>
> They returned to her apartment, where appellant forced her to perform oral and vaginal sex. He told her to get in the bathtub while he rummaged through her apartment. Eventually, he left. Later in the morning, Watkins was examined by a doctor, and vaginal samples were taken. A rape kit was prepared and sent to the county forensics laboratory, the Southwestern Institute of Forensic Sciences (SWIFS). A DNA profile of an unknown male was obtained from Watkins's vaginal sample. In 2008, that profile was matched with appellant's DNA profile.
>
> The jury found appellant guilty as charged. (We note the judgment includes an affirmative finding that appellant used a deadly weapon – a firearm). In the punishment phase, the State presented evidence, including DNA evidence and testimony linking appellant to the assaults of seven other women....
>
> On the last day of the punishment hearing, October 21, 2009, a local newspaper published an article reporting criticism of certain conditions

> and procedures at SWIFS by Chris Nulf, Ph.D., a former SWIFS employee. Nulf worked at SWIFS from March 2008 to May 2009. Appellant's counsel discussed this development but decided they did not have time to pursue it.
>
> In his amended motion for new trial, appellant referred to the newspaper article, which was attached to the motion, and alleged he received ineffective assistance of counsel. Pertinent to this appeal, appellant's amended motion argued that counsel "had a duty to, at a minimum, offer the evidence in a bill of exception" to include it in the record and this evidence "may well have mitigated against the maximum sentence that the jury imposed on Defendant."
>
> At the hearing on the amended motion for new trial, appellant's additional ground seeking a new trial "in the interest of justice" was tried by consent. At the conclusion of the hearing on the amended motion for new trial, the trial court orally denied both grounds of ineffective assistance of counsel and "in the interest of justice."

*Ledbetter*, 2012 WL 3241654, at *1-*2 (footnotes omitted).

The Texas Court of Criminal Appeals (the "CCA") refused Ledbetter's petition for discretionary review ("PDR"). *See Ledbetter v. State*, PD-1290-12 (Tex. Crim. App. Jan. 9, 2013). Pertinent to the federal habeas application, Ledbetter's PDR presented a single issue to the CCA – that he was denied due process because the Court of Appeals failed to consider the prosecution's failure to disclose that the DNA lab was under investigation. *See* Dkt. No. 13-9.

The three claims that Ledbetter made in the state habeas proceedings are the same three claims that he makes in his Section 2254 application – (1), similar to the claim in his PDR, that, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution withheld evidence that the DNA lab had been found to have engaged in testing improprieties; (2) that the Confrontation Clause of the United States

Constitution was violated, because a witness that testified about the DNA testing lacked personal knowledge of that testing; and (3) that his trial counsel provided constitutionally ineffective assistance of counsel ("IAC"), because counsel failed to raise the DNA testing issue at trial and because, during direct examination, counsel inferred that Ledbetter had committed an additional extraneous offense.

The CCA denied Ledbetter's state habeas application without written order on the findings of the trial court made without a hearing. *See Ex parte Ledbetter*, WR-80,355-03 (Tex. Crim. App. Nov. 26, 2014); *see also* Dkt. Nos. 13-6 (the CCA's decision) & 13-7 at 91-94 (trial court's findings, conclusions, and recommendation).

Ledbetter's Section 2254 application was timely filed in December 2014. *See* Dkt. Nos. 3 & 4.

## Legal Standards and Analysis

*Brady* [Claim 1]

"A successful *Brady* claim has three elements: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Rocha v. Thaler*, 619 F.3d 387, 393 (5th Cir. 2010) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)); *see also Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008) (nothing as to *Brady*'s third "basic element" that there must be "a reasonable probability that prejudice ensued – in other words, 'materiality'").

Materiality "is generally the most difficult element to prove in a *Brady* claim," *Coleman v. Cain*, Civ. A. No. 07-3655, 2014 WL 348541, at *10 (E.D. La. Jan. 31, 2014) (citing *Cobb v. Thaler*, 682 F.3d 364, 377 (5th Cir. 2012)), and "is met when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict,'" *Rocha*, 619 F.3d at 397 (quoting *Banks v. Dretke*, 540 U.S. 668, 698 (2004) (in turn quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995))).

To establish materiality, a court must analyze "the suppressed evidence collectively, not item by item," *Kyles*, 514 U.S. at 437, but materiality need not be demonstrated "by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal," *id.* at 434; *accord Spence v. Johnson*, 80 F.3d 989, 994 (5th Cir. 1996); *see also Dennis v. Wetzel*, 966 F. Supp. 2d 489, 516 (E.D. Pa. 2013) (discussing a state court's misapplication of *Kyles* in the context of habeas review: "'A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict.' Indeed, the *Kyles* Court rebuked the dissent for assuming that Kyles must lose on his *Brady* claim because there would still have been enough evidence to convict, even if the favorable evidence had been disclosed. 'The rule is clear, and none of the *Brady* cases has ever suggested that sufficiency of the evidence (or insufficiency) is the touchstone.' Evidence does not have to upset every aspect of the prosecution's case to be material under *Brady*; rather, the question is whether the defendant received a fair trial in the absence of the undisclosed evidence." (quoting 514

U.S. at 434-35 & n.8)).

Materiality, moreover, "'depends almost entirely on the value of the evidence relative to the other evidence mustered by the state.'" *Rocha*, 619 F.3d at 397 (quoting *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004)); *accord Canales v. Stephens*, 765 F.3d 551, 575 (5th Cir. 2014).

> Thus, when the undisclosed evidence is merely cumulative of other evidence in the record, no *Brady* violation occurs. Similarly, when the testimony of the witness who might have been impeached by the undisclosed evidence is strongly corroborated by additional evidence supporting a guilty verdict, the undisclosed evidence generally is not found to be material. Conversely, if the impeaching evidence would seriously undermine the testimony of a key witness on an essential issue or there is no strong corroboration, the withheld evidence has been found to be material.

*Sipe*, 388 F.3d at 478 (citation footnotes, internal quotation marks, and brackets deleted).

Understood in a context familiar in habeas review, "[t]he materiality standard under *Brady* ... is identical to the prejudice standard under *Strickland*." *Johnson v. Scott*, 68 F.3d 106, 109-10 (5th Cir. 1995) (citing *Kyles*, 514 U.S. at 434). And the United States Court of Appeals for the Fifth Circuit "has granted habeas relief based on *Brady* claims when the impeachment evidence that was withheld was the only direct evidence linking the defendant to the crime" and has "also considered it important if the prosecutor told the jury that the witnesses had no reason to lie." *Canales*, 765 F.3d at 575 (collecting cases).

As the state courts have rejected this claim on its merits, this Court may only grant relief if the state-court adjudication "resulted in a decision that was" either

"contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Therefore, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. Furthermore, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance," and federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

Pertinent to Ledbetter's *Brady* claim, the state habeas court found that on appeal "none of the criticism directed at the lab had any bearing on the testing in [his] case" and that "[e]ven if the prosecutors were aware of the criticism of the lab, Ledbetter cannot establish harm" – noting that the "issue [of harm] was litigated on appeal." Dkt. No. 13-7 at 93. Related to these findings, the Dallas Court of Appeals explained that,

> [o]n appeal, appellant makes the same arguments as in his amended motion for new trial: counsel was ineffective for failing to investigate Nulf's claims concerning SWIFS because such evidence could "potentially have exonerated him" and "possibly have reduced his sentence." However, the DNA tests concerning the offenses against J.L. and S.B. occurred in 2005 and 2006, before Nulf's employment. In addition, the record shows that Nulf's allegations concerning the outdated manuals and expired chemical would not have impacted SWIFS's DNA testing in this case. And there was conflicting evidence from McDonald as to any impact from the alleged uncalibrated autoclave, case notes stored in a hallway, and the box fan. Accordingly, even assuming counsel's failure to investigate Nulf's allegations and present such evidence at the punishment phase fell below the standard of professional norms, we cannot conclude that, but for such deficiency there is a reasonable probability that the outcome of the punishment phase would have been different.

*Ledbetter*, 2012 WL 3241654, at *8 (citations omitted).

Ledbetter has failed to show that the state court's adjudication of his *Brady* claim was an "unreasonable application" of *Brady*'s materiality requirement as that requirement is understood through *Strickland*'s prejudice prong. *See, e.g., Williams v. Cain*, 85 F. App'x 6, 8 (5th Cir. 2004) (per curiam) (in the context of affirming denial of a Section 2254 application, noting that "[t]he tests for materiality for a *Brady* claim and for prejudice for an ineffective assistance of counsel claim are the same: a reasonable probability that the outcome of the proceedings would have been different had the evidence been disclosed and used at trial" (citation omitted)).

The Court should therefore deny this claim.

Confrontation Clause and IAC [Claims 2 and 3]

Although the state habeas court discussed the merits of Ledbetter's *Brady* claim, that court refused to consider his second and third claims – the Confrontation Clause and IAC claims – on their merits, because Ledbetter raised all three habeas claims on direct appeal. *See* Dkt. No. 13-7 at 92 ("A writ is not a rerun of an appeal." (citing *Ex parte Acosta*, 672 S.W.2d 470, 472 (Tex. Crim. App. 1984))).

Ordinarily, where the state habeas court's adjudication of a claim is that it should be denied as already considered and rejected on direct appeal and thus procedurally defaulted, this Court "looks through" that decision to "the last reasoned opinion" issued as to such claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 n.3 (1991) ("Since a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a preexisting procedural default, its effect upon the availability of federal habeas is nil – which is precisely the effect accorded by the 'look-through' presumption."); *see also Leachman v. Stephens*, 581 F. App'x 390, 395 (5th Cir. 2014) ("a state habeas decision [ ] found that the petitioner's argument[ ] has been 'previously considered and rejected' on direct appeal[, and] ... 'in light of that determination' [this Court should] 'examine the last clear state court decision of any substance'" (quoting *Divers v. Cain*, 698 F.3d 211, 216 (5th Cir. 2012))).

But, here, Ledbetter failed to raise the Confrontation Clause and IAC claims in his PDR. *See* Dkt. No. 13-9. Therefore, the factual and legal basis of neither claim "has been fairly presented to the" CCA, as the highest available state court for review, which means that Ledbetter has failed to properly exhaust state court remedies as to

-9-

both claims. *Campbell v. Dretke*, 117 F. App'x 946, 957 (5th Cir. 2004) ("'The exhaustion requirement is satisfied when the substance of the habeas claim has been fairly presented to the highest state court' so that a state court has had a 'fair opportunity to apply controlling legal principles to the facts bearing on the petitioner's constitutional claim.'" (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004))); *see* 28 U.S.C. § 2254(b)(1)(A); *see also Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015) ("The exhaustion doctrine demands more than allusions in state court to facts or legal issues that might be comprehended within a later federal habeas petition. The exhaustion doctrine is based on comity between state and federal courts, respect for the integrity of state court procedures, and 'a desire to protect the state courts' role in the enforcement of federal law.'" (quoting *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (in turn quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982))))).

Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5. This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but

for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).

An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

The unexhausted claims presented in the Section 2254 petition are procedurally barred, because Ledbetter has not shown that these claims would be allowed in a subsequent habeas proceeding in state court under Texas law. Nor has he asserted the "fundamental miscarriage of justice" exception to procedural bar.

Alternatively, because exhaustion of state remedies is not "a jurisdictional prerequisite, but a prudential policy based on concerns for federalism," *Dispensa v. Lynaugh*, 847 F.2d 211, 217 (5th Cir. 1988); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."), the Court may look through Ledbetter's procedural defaults, to the Dallas Court of Appeals's adjudication of Ledbetter's Confrontation Clause and IAC claims on direct appeal, as "the last clear state court decision of any substance" as to these claims, *Divers*, 698 F.3d at 216.

But Ledbetter has not shown that the state appeals court's decision as to either claim is either an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts in light of the applicable evidence. The undersigned has examined the thorough appeals court's decision as to these claims, *see Ledbetter*, 2012 WL 3241654, at *3-*9 – the *Strickland* prejudice analysis of which is excerpted above – and, as compared to allegations in Ledbetter's habeas application, Ledbetter has failed to overcome Section 2254(d)'s "highly deferential standard for evaluating state court rulings," *Woodford*, 537 U.S. at 24, by demonstrating that "there was no reasonable basis for the state court to deny relief," *Harrington*, 562 U.S. at 98.

The Court should therefore also deny these claims.

## Recommendation

The Court should deny the application for writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 26, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE